In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2215

SAMUEL KWASI ASERE,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,
United States Attorney General,

*Respondent.*

On Petition for Review of an Order of
The Board of Immigration Appeals.
No. A78-293-009

ARGUED JANUARY 4, 2006—DECIDED MARCH 2, 2006

Before CUDAHY, RIPPLE, and KANNE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* This is a disappointing case in which the efforts of this Court to go beneath the surface of things have been frustrated. Petitioner Samuel Kwasi Asere, a native and citizen of Ghana, has appealed a Board of Immigration Appeals (BIA) decision denying him asylum and ordering him returned to Ghana. Asere fled Ghana after rejecting his family's plea to be a priest of their fetish religion and becoming an adherent of Christianity. Asere was originally granted asylum by an immigration judge (IJ), and this decision was upheld by the BIA. However, after the government filed a motion to reconsider, the

BIA reversed itself and denied Asere asylum. Asere now appeals.

## I. Background

Samuel Kwasi Asere is a citizen and national of Ghana. He was born in 1974 and was raised in the western region of Ghana. He lived in the town of Suraano and was a farmer before leaving Ghana. His family members worship a fetish called Atiamframa. His uncle, Nana Kwaku Dua, was a fetish priest until he died on May 5, 2000. Asere was a member of this religion until he began practicing Christianity in 1990. In 1994, he was baptized by a pastor in the Evangelical Trinity Church, located in a neighboring village. After he was baptized, Asere began traveling to the neighboring village to assist the Pastor by conducting prayer meetings at Sunday School with children. Asere wanted to become a Pastor in the Church.

After Asere's uncle, the fetish priest, died in 2000, the elders of Asere's family named Asere the new fetish priest since he was the only son in the family. However, Asere refused to accept this role because of his Christian beliefs. Asere testified that the elders of his family threatened to kill him because he refused to become the new priest.

Asere fled his village in June 2000 and first went to Debesu, a neighboring village. He then went to the Ivory Coast and lived there for one month before arriving in France. He then moved to Holland because he did not speak French. He left Holland and attempted to enter the United States at O'Hare International Airport on November 18, 2000, under the visa waiver program. He initially sought entry using a fraudulent British passport. The former Immigration and Naturalization Service (INS) placed Asere in "asylum only" proceedings and issued a Notice of Referral to an IJ after Asere requested asylum. He requested asylum, withholding of removal and relief under the

Convention Against Torture Act (CAT) based on his claim that he would be persecuted by his family if he returned to Ghana because he no longer practiced their traditional religion.

During his initial asylum hearing, Asere testified that he feared returning to his country because he believed the elders of the fetish religion would kill him. He testified that he would not be safe anywhere in Ghana because he would preach the word of God and spread the Christian message, thus enabling his family members to find him.

At Asere's asylum hearing, his cousin, Dominic Agyekum, testified on Asere's behalf. Agyekum is a lawful permanent resident of the United States. He testified that the elders of the fetish would indeed kill Asere because of his refusal to serve as the fetish priest. Additionally, he testified that the local police in Ghana would not protect Asere because they would treat this issue as a family matter and refer it to the elders of the family to resolve. Affidavits from Asere's father and uncle, active members of the fetish religion, indicate that they believe Asere's life would be in danger if he returned to Ghana.

On February 19, 2003, following the conclusion of the merits hearing, the IJ granted Asere's application for asylum. The IJ issued a written decision as well. In the written decision, the IJ found Asere credible and noted that based upon Asere's testimony and other documentary evidence, he had a "well-founded fear of present or future persecution" in Ghana.

The government filed a timely appeal with the BIA. On May 26th, 2004, the BIA summarily affirmed without opinion the IJ's decision to grant Asere asylum. On June 15, 2004, the government filed a motion to reconsider the BIA's affirmance of the IJ's decision to grant asylum. On January 25, 2005, the BIA granted the government's motion to

reconsider and, reversing itself, sustained the underlying appeal. The BIA held that Asere had "failed to meet the burden of establishing that it would not be reasonable for him to relocate within his native country, as the persecution he fears is not from the government or a government-sponsored entity." It vacated the IJ's decision and ordered Asere removed from the United States to Ghana. Asere did not initially file a petition for review of this order.

On February 18, 2005, Asere filed a motion with the BIA to reconsider the January order. On March 31, 2005, the BIA denied Asere's motion to reconsider, finding that he failed to demonstrate that reconsideration was warranted based on legal or factual error in the previous decision. Asere then appealed to this Court on May 2, 2005.

## II. Discussion

We cannot reach the merits of this case unless we have jurisdiction. The government argues that we do not have jurisdiction to review the BIA's January 25, 2005 decision to grant the government's motion to reconsider, and, reversing itself, to sustain the underlying appeal denying Asere asylum because Asere did not file an appeal from the January decision within thirty days. Further, the government argues that Asere waived review of the BIA's March 31, 2005 decision denying his February motion to reconsider because he did not address in either of his briefs how the BIA in March abused its discretion in denying his motion.

A petition for review of a final order of removal "must be filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). "As the period is jurisdictional no excuse is availing." *Ajose v. Gonzales*, 408 F.3d 393, 395 (7th Cir. 2005). *See Sankarapillai v. Ashcroft*, 330 F.3d 1004, 1006 (7th Cir. 2003) (the 30-day deadline is jurisdictional). The BIA issued a final order

of removal on January 25, 2005. Thirty days from January 25, 2005 was February 24, 2005. Asere filed his petition for review on May 2, 2005. Asere wrote in his brief that he sought review of the "BIA decision of January 25, 2005 reversing the grant of asylum by the Immigration Judge." However, his petition was ninety-seven days late. We have consistently dismissed petitions for review when they have been late (sometimes even just one day late). *See, e.g.*, *Sankarapillai*, 330 F.3d at 1006 (dismissing a petition that was due by April 17 but was not received by the Court until April 18); *Simtion v. Ashcroft*, 393 F.3d 733, 734 (7th Cir. 2004) (dismissing an untimely petition).

Asere's lawyer made no attempt in his initial brief or his reply brief to explain this tardiness. His only response is that he had to wait for the BIA to reach its decision on his motion to reconsider, and the BIA did not do so until March 31, 2005. He argues that because the BIA did not issue its decision on his petition to reconsider until March 31, 2005, the instant petition was filed within the 30-day filing deadline. However, the case law could not be clearer on this issue; a motion to reconsider does not toll the initial 30-day filing deadline for seeking judicial review of the underlying removal order. The finality of a removal order "is not affected by the subsequent filing of a motion to reconsider." *Stone v. INS*, 514 U.S. 386, 405 (1995). *See Ahmed v. Ashcroft*, 388 F.3d 247 (7th Cir. 2004) (filing a motion to reconsider does not toll the time for seeking judicial review of the underlying order).

Asere's appeal was, of course, filed in time for us to consider the BIA's decision to deny Asere's motion to reconsider, which was issued on March 31, 2005. However, Asere's brief focuses entirely on the BIA's January 25th decision and does not once mention the March 31st order in the discussion section of the brief. The two headings for the discussion section of the brief are: "1. The BIA decision of January 25, 2005 reversing the grant of asylum by the

Immigration Judge was erroneous"; and "2. The Immigration Judge's grant of asylum to petitioner was the right decision." The March decision is mentioned in only one sentence in the "facts" section. Thus, we must conclude that Asere has waived his right to seek review of the March 31, 2005 BIA decision. *See Brucaj v. Ashcroft*, 381 F.3d 602, 611 n.7 (7th Cir. 2004) (Petitioner "did not make any argument in her opening brief regarding her CAT claim. Thus she has waived that claim."); *Luellen v. City of East Chicago*, 350 F.3d 604, 612 n.4 (7th Cir. 2003) (Petitioner "failed to raise this argument in his opening brief, it is therefore waived."); *Ajayi v. Aramark Business Services*, 336 F.3d 520, 529 (7th Cir. 2003) ("It is not enough for [plaintiff] merely to refer generally to these actions in her statement of facts; if she intends to challenge this aspect of the district court's ruling, she must identify the legal issue, raise it in the argument section of her brief, and support her argument with pertinent authority.").

We therefore conclude that we cannot review either of the decisions adverse to Asere. Ironically, even if we had jurisdiction to review the BIA's January 25, 2005 decision to reconsider, we would have difficulty doing so. The BIA's January 25 decision left much to be desired. After overturning not only the IJ's opinion, but also its own initial opinion, the BIA gave only a brief explanation of its new decision to deny asylum. It did little to explain how its reasoning changed from its first decision, which was an affirmance without opinion, to its second. We expect more from the BIA in these abrupt changes in direction without adequate explanation.

Though this case is disappointing, all hope may not be lost for Asere. Ordinarily, a motion to reopen must be filed no later than 90 after the date on which the final administrative decision was rendered in the proceeding sought to be reopened. 8 C.F.R. § 1003.2(c)(2). For Asere, that time has lapsed. However, we have held that the

deadlines for motions to reopen are not jurisdictional, and are therefore subject to equitable tolling. *Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005). We have also suggested that ineffective assistance of counsel is a possible basis for tolling the reopening deadline. *See id.*; *Mahmood v. Gonzalez*, 427 F.3d 248, 251 (3d Cir. 2005). As is all too evident, the failure to file a timely appeal of the BIA's January 25, 2005 decision was fatal. Based on this failure, Asere might have sufficient grounds to file a new motion to reopen to challenge the BIA's decision.

Petition for review dismissed for lack of jurisdiction.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*

USCA-02-C-0072—3-2-06