In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3378

ADIL MURATOSKI,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of a Final Order of
the Board of Immigration Appeals.
A027 615 649

ARGUED APRIL 6, 2010—DECIDED SEPTEMBER 20, 2010

Before KANNE, ROVNER and TINDER, *Circuit Judges*.

ROVNER, *Circuit Judge*. Adil Muratoski petitions for review of a decision of the Board of Immigration Appeals ("BIA" or "Board"). The BIA denied Muratoski's Motion to Reconsider its earlier decision dismissing his appeal of an Immigration Judge's ("IJ") decision. The IJ denied Muratoski's application for cancellation of removal because he lacked good moral character. Because Muratoski did not preserve the issue he now asks us to review, we deny his petition.

**I.**

Adil Muratoski is a native and citizen of Macedonia who entered the United States in August 1986. Shortly thereafter, the former Immigration and Naturalization Service ("INS") served Muratoski with an Order to Show Cause, commenced deportation proceedings against him, and charged him with being deportable from the United States as an alien who entered without inspection. During deportation proceedings held later that year, Muratoski admitted he was deportable as charged. He applied for asylum and withholding of deportation.[1] On May 4, 1987, an IJ entered an order finding Muratoski deportable and denying his applications for asylum and withholding of deportation. The IJ granted Muratoski the privilege of voluntary departure, with the warning that the voluntary departure would ripen into an order of deportation if Muratoski failed to depart in the time allotted. The BIA dismissed Muratoski's appeal on December 8, 1992, granting him thirty days to depart voluntarily. Muratoski failed to heed that order, and on March 10, 1993, the INS sent Muratoski a letter ordering him to report for deportation.

Unbeknownst to the INS, Muratoski had been working another angle in his bid to stay in the United States. In

---

[1]  A fair amount of the terminology has changed over the last twenty-five years. Removal has taken the place of deportation, for example. The Department of Homeland Security has taken over the functions of the former INS. We will apply the terms in use at the time of the events described.

September 1992, while his case was on appeal with the Board, he met an immigration attorney at a restaurant. The attorney, whose name Muratoski no longer recalls, offered to help Muratoski become a citizen for a $3500 fee. Muratoski paid the fee and signed papers prepared by his new lawyer. The attorney accompanied him to the post office where he applied for a United States passport using a falsified birth certificate purporting that he had been born in Chicago. After his passport arrived in the mail, Muratoski continued to live in the United States for another thirteen or fourteen years without detection. During that time, he used the passport to depart and reenter the United States multiple times, even renewing the passport after it expired.

In December 2006, Immigration and Customs Enforcement ("ICE") apprehended Muratoski at his home in Arlington Heights, Illinois. ICE officials served Muratoski with a Notice to Appear ("Notice"), placing him in removal proceedings. They later served him an amended Notice ("Amended Notice") which charged new grounds of removability. The Amended Notice charged that Muratoski had been granted voluntary departure in 1992 but failed to voluntarily depart within the time allotted. It also charged that Muratoski effectively deported himself when he left the United States subsequent to his deportation. He then erroneously was admitted to the United States in 2002 based on the fraudulently obtained passport. The Amended Notice charged he was removable under 8 U.S.C. § 1227(a)(1)(A) because, at the time of his 2002 entry, he was inadmissible for making a false claim of citizenship, *see* 8 U.S.C.

§ 1182(a)(6)(C)(ii), and because he sought admission in 2002 after having been deported, *see* 8 U.S.C. § 1182(a)(9)(A)(ii). ICE also asserted that Muratoski was removable under 8 U.S.C. § 1227(a)(3)(D), as an alien who falsely represented himself to be a citizen. On February 15, 2007, Muratoski admitted the factual allegations against him in the Amended Notice and conceded removability. Five days later, as we will discuss below, he applied for cancellation of removal.

Continuing his strategy of fighting removal on multiple fronts, on January 8, 2007, Muratoski moved to reopen the 1992 deportation order with the BIA. In that motion, Muratoski asserted that an attorney obtained the passport for him and that he was unaware of the fraudulent nature of the passport. He also maintained that he was eligible for cancellation of removal. The BIA denied the motion to reopen on March 2, 2007, finding that it was unsupported by any evidence. The BIA also found that Muratoski's February 15, 2007 admission of the allegations listed in the Notice to Appear undercut his claim that he believed his passport was genuine.

Returning to the other path to relief that Muratoski pursued, on February 20, 2007, he applied for cancellation of removal. In general, the Attorney General may cancel removal of an alien who is inadmissible or deportable from the United States if the alien, among other things, has "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date" of an application for cancellation of removal; and "has been a person of

good moral character during such period." 8 U.S.C. § 1229b(b)(1)(A)-(B). Section 1101(f) provides a list of persons who are *per se* excluded from receiving a finding of good moral character. Among the categories excluded are drunkards, gamblers, aggravated felons and persons who assisted Nazi persecutions. Section 1101(f) also contains a "catch-all" provision as well as an exclusion to the catch-all:

> The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character. In the case of an alien who makes a false statement or claim of citizenship, or who registers to vote or votes in a Federal, State, or local election (including an initiative, recall, or referendum) in violation of a lawful restriction of such registration or voting to citizens, if each natural parent of the alien (or, in the case of an adopted alien, each adoptive parent of the alien) is or was a citizen (whether by birth or naturalization), the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed at the time of such statement, claim, or violation that he or she was a citizen, no finding that the alien is, or was, not of good moral character may be made based on it.

8 U.S.C. § 1101(f). Under this provision, the fact that a person is not in one of the listed categories does not preclude a finding that the person lacked good moral character. But if a person makes a false claim of citizenship, and that person meets the other criteria listed

(having U.S. citizen parents, residing in the United States prior to age 16, a reasonable belief that he or she was a citizen at the time the claim was made), then a finding of lack of good moral character may not be based on that false claim of citizenship. *Other* false claims of citizenship *may be* the basis of a finding of lack of good moral character. *See Guadarrama de Contreras*, 24 I. & N. Dec. 625, 627 (BIA 2008) (a person "who has made a false claim of United States citizenship may be considered a person who is not of good moral character," but Section 1101(f) of the Act "does not, however, mandate such an outcome.").

The IJ held a hearing on Muratoski's February 20, 2007 application for cancellation of removal. Muratoski testified that he obtained his passport with the assistance of the unnamed attorney. Muratoski also admitted he had used the passport to travel to and from the United States multiple times between 1992 and 2006. He confirmed that during his 1986 and 1987 deportation hearings, he had conceded that he was a citizen of the former Yugoslavia. He conceded that, although he thought at one time he was a United States citizen, he came to realize he had been mistaken. He testified that he paid the unnamed attorney $3500, signed some papers, and filed them at the post office with the attorney's assistance. After his passport arrived in the mail several weeks later, the attorney told Muratoski he was a United States citizen.

But among the papers he submitted with his passport application was a birth certificate purporting that he had been born in Chicago. Nonetheless, he testified that, at the time, he did not know the document was a birth

certificate or that it was false. The IJ apparently did not believe Muratoski's claim of ignorance about the false nature of the documents supplied to gain the passport. He found Muratoski was not eligible for cancellation of removal because he lacked good moral character. *See* 8 U.S.C. § 1229b(b)(1). The IJ, citing 8 U.S.C. § 1101(f), based that finding on the fact that Muratoski had falsely represented himself to be a United States citizen. He ordered Muratoski removed to Macedonia.

Muratoski timely appealed that order to the Board. He contended that the IJ had failed to consider whether he reasonably believed himself to be a United States citizen at the time he obtained his passport. The BIA dismissed the appeal on May 22, 2008, noting that Muratoski did not deny that he possessed a fraudulent passport or that he used it multiple times to reenter the United States. The BIA cited Section 1101(f), listing classes of persons who are *per se* disabled from claiming good moral character. The BIA recognized that the "catch-all" provision in Section 1101(f) specifies that a person need not fall within one of the *per se* classes in order to be found lacking in good moral character, with one exception. Section 1101(f) permits an IJ to find that a person who makes a false claim of citizenship is not of good moral character unless (1) that person's parents are citizens, (2) that person permanently resided in the United States prior to the age of 16, and (3) that person reasonably believed at the time of claiming citizenship that he or she was a citizen. A person meeting the three criteria of the exception may not be found to lack good moral character simply on the basis of making a false claim

of citizenship. The BIA found that the exception to the catch-all provision in Section 1101(f) did not apply to Muratoski because he made no claim that his parents were United States citizens or that he resided in the United States before age 16. The BIA ruled that the agency was therefore not precluded from finding that Muratoski lacked good moral character on the basis of a false claim of citizenship. The BIA also found that the IJ did not clearly err in finding that Muratoski either knew or should have known he was not a United States citizen at the time he made that claim. Among the evidence supporting the IJ's finding was the timing of Muratoski's acquisition of the false passport and the use of a document lisiting his birthplace as Chicago.

On June 11, 2008, Muratoski filed a Motion to Reconsider (the "Motion"). In the Motion, Muratoski asked the BIA

> to reconsider the May 22, 2008, decision with reference to the following:
>
> a. The issue of good moral character in the narrow review as was concluded by the Immigration Judge (the Respondent's believing that he is a U.S. citizen).
>
> b. The issue of Respondent's failure to depart the U.S. as ordered by the Immigration Court after he received his U.S. passport.

R. 3, at 2-3. Specifically, Muratoski conceded that he held a fraudulent U.S. passport but argued that if he reasonably believed he was a U.S. citizen, then Section 1101(f) may not be construed against him. Muratoski complained that, in its dismissal of his original appeal, the

BIA stated that Section 1101(f) required more than a reasonable belief of citizenship. The IJ focused on whether Muratoski reasonably believed he was a U.S. citizen and concluded that he knew or should have known he was not and therefore lacked good moral character in presenting himself as a citizen. Muratoski wished only for review of the IJ's conclusion that his belief was unreasonable but the BIA addressed additional sections of 1101(f) that were not referenced by the IJ. Muratoski also objected to the BIA's comments about his failure to depart the United States voluntarily when he had been ordered to do so in 1992. Muratoski had not addressed that issue in this round of proceedings because the IJ had not raised it. Muratoski argued in the Motion to Reconsider that at the time he was allowed voluntary departure, he thought he was a United States citizen no longer subject to the jurisdiction of the immigration court.

The BIA denied the Motion to Reconsider on August 31, 2009. It noted that it had in fact reviewed the IJ's finding that Muratoski lacked good moral character, and had found no clear error in the IJ's conclusion that Muratoski had represented himself to be a United States citizen when he had no reasonable belief that he was in fact a citizen. Again reviewing the circumstances of Muratoski's claim of citizenship, the BIA noted that, in applying for his passport, Muratoski had used a birth certificate stating that he was born in Chicago. The BIA also cited the IJ's finding that Muratoski was desperate not to leave the United States and had admitted during testimony that he would have signed anything to stay

in this country. The BIA further cited the IJ's reliance on
the timing of obtaining the passport as evidence that
Muratoski did not have a good-faith belief that he was a
United States citizen. Muratoski had applied for the
passport (using documents that claimed he was born
in Chicago) after the IJ denied him political asylum and
withholding of deportation, while his appeal of that
decision was pending before the BIA. In those very pro-
ceedings for asylum and withholding of deportation,
Muratoski had conceded he was born in Yugoslavia.
In denying the motion to reconsider, the BIA cited
its own decision in *Matter of Guadarrama de Contreras*,
24 I. & N. Dec. 625 (BIA 2008), for the proposition that
certain persons who make a false claim of citizenship
may be found to be lacking good moral character al-
though Section 1101(f) does not mandate that finding.

## II.

In his petition to this court, Muratoski contends that
the Board misconstrued Section 1101(f) and failed to
follow its own precedent in holding that he lacked good
moral character on the basis of a false claim of citizenship.
According to Muratoski, simply "claiming that you are
a citizen is not enough to bar a finding of good moral
character according to Board precedent." Brief for Peti-
tioner, at 15. Citing the BIA's decision in *Guadarrama
de Contreras*, he contends that a mere false claim of citizen-
ship does not automatically preclude a finding of good
moral character. He also maintains that the Board miscon-
strued Section 1101(f) in finding that a false claim of

citizenship was sufficient to bar a finding of good moral character.

## A.

The government first argues that we lack jurisdiction to review anything other than the Board's denial of Muratoski's motion to reconsider. We have the authority and the obligation in every case to assess our own jurisdiction, and we undertake this review *de novo*. *Fonseca-Sanchez v. Gonzales*, 484 F.3d 439, 443 (7th Cir. 2007); *Gattem v. Gonzales*, 412 F.3d 758, 762 (7th Cir. 2005). Muratoski filed his petition in this court on September 29, 2009, within thirty days of the BIA's August 31, 2009 decision denying his motion to reconsider, and his petition is therefore timely as to that decision. *See* 8 U.S.C. § 1252(b)(1) ("[t]he petition for review must be filed not later than 30 days after the date of the final order of removal"). *See also Asere v. Gonzales*, 439 F.3d 378, 380 (7th Cir. 2006) (a petition for review of a final order of removal must be filed not later than thirty days after the date of that order). Under the same authority, we may not review the Board's underlying decision of May 22, 2008 dismissing Muratoski's appeal of the IJ's decision because his petition is not timely as to that decision. *Asere*, 439 F.3d at 380 (the thirty-day limit is jurisdictional and therefore may not be excused). Moreover, a motion to reconsider does not toll the time to seek judicial review. *Stone v. INS*, 514 U.S. 386, 405 (1995) (the finality of a removal order is not affected by the subsequent filing of a motion to reconsider); *Rehman v. Gonzales*, 441 F.3d 506,

508 (7th Cir. 2006) (a motion asking the BIA to reconsider its decision does not toll the time to seek judicial review); *Asere*, 439 F.3d at 380 ("the case law could not be clearer on this issue; a motion to reconsider does not toll the initial 30-day filing deadline for seeking judicial review of the underlying removal order"). Thus, the only decision before us is the Board's denial of Muratoski's motion to reconsider, a decision that we review for abuse of discretion. *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 724 (7th Cir. 2005); *Ali v. Ashcroft*, 395 F.3d 722, 731 (7th Cir. 2005).

**B.**

The government next contends that Muratoski did not exhaust the only argument he raises on appeal, and we therefore may not consider that argument. *See* 8 U.S.C. § 1252(d)(1) (a court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right). *See also Ghaffar v. Mukasey*, 551 F.3d 651, 654 (7th Cir. 2008) (an alien ordered removed from this country is required to exhaust the administrative remedies available to him before seeking judicial review of the removal order). "The duty to exhaust includes the obligation to first present to the BIA any argument against the removal order as to which the Board is empowered to grant the alien meaningful relief." *Ghaffar*, 551 F.3d at 654. Although the failure to exhaust may be excused when the alien is making a constitutional claim, no exception to the exhaustion requirement applies here because the BIA is

empowered to grant Muratoski meaningful relief on the issue he now raises. *Ghaffar*, 551 F.3d at 655.

The government characterizes Muratoski's issue on appeal as a challenge to the BIA's construction of Section 1101(f), the statutory provision governing the finding of good moral character. According to the government, in his motion to reconsider, Muratoski asked the Board to consider only whether the IJ correctly concluded that he lacked good moral character because he did not reasonably believe he was a U.S. citizen when he portrayed himself to be one.[2] The government points out that Muratoski now argues that the BIA misconstrued Section 1101(f) and also misconstrued its own precedent in *Guadarrama de Contreras* in finding that a false claim of citizenship automatically precluded a finding of good moral character.[3]

The government is correct that Muratoski did not exhaust the argument he makes now because he did not

---

[2] In its May 22, 2008 decision, the BIA weighed against Muratoski his failure to depart the United States as ordered by the immigration court after he received his passport. In the motion to reconsider, Muratoski complained that this was error. Muratoski does not repeat this argument in his petition to this court. The BIA correctly determined that Muratoski's procurement of the passport after he had been ordered to depart undermined his claim that he reasonably thought he was a United States citizen.

[3] As we will address shortly, the Board made no such mistake. We are merely recounting the argument from Muratoski's perspective at this stage of the analysis.

raise it in his motion to reconsider. In the motion to reconsider, Muratoski did not contend that the Board misconstrued Section 1101(f) but rather complained that the Board addressed parts of Section 1101 on which the IJ had not relied. He wished the Board to reconsider the IJ's conclusions only on the grounds the IJ had considered. He did not cite *Guadarrama de Contreras* in the motion to reconsider, much less argue that the Board had misconstrued this precedent in its May 22, 2008 decision. We therefore may not consider this argument because Muratoski failed to exhaust all administrative remedies available to him as of right. *See* 8 U.S.C. § 1252(d)(1) (a "court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."). As Muratoski makes no other argument in his petition to this court, we must deny the petition.

## C.

For the sake of completeness, if we were to consider Muratoski's argument on the merits, his petition would still fail. Muratoski claims that the Board failed to follow *Guadarrama de Contreras* and misconstrued Section 1101(f). The Board did no such thing. The Board correctly found that the IJ could find, but was not compelled to find, that Muratoski lacked good moral character on the basis of his false claim of U.S. citizenship. Muratoski was not part of the excepted group of individuals who came to the United States before age 16, had citizen parents, and reasonably believed they were citizens at

the time they made the false claim of citizenship. The BIA then found that the IJ did not err in finding that Muratoski lacked good moral character because he had made a false claim of citizenship and he did so at a time when he clearly had no reasonable belief that he was a citizen. He claimed to have been born in Chicago while proceedings were pending in which he had admitted he was born in Yugoslavia. He claimed to be a citizen even as his claims for asylum and withholding of deportation were pending. Although we may review non-discretionary findings of the IJ or BIA (including questions of statutory interpretation and constitutional issues), we lack jurisdiction to review a purely discretionary decision that Muratoski lacked good moral character. 8 U.S.C. § 1252(a)(2)(B)(i); *Cueller Lopez v. Gonzales*, 427 F.3d 492, 493 (7th Cir. 2005). Because neither the IJ nor the BIA misconstrued Section 1101(f) but merely made discretionary decisions, we would be forced to dismiss the appeal for lack of jurisdiction if we considered the merits.

### III.

Because Muratoski failed to exhaust his administrative remedies on the sole issue he raises in the petition for review, the petition is DENIED.