NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 9, 2014
Decided October 16, 2014

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-1081

| | |
|---|---|
| LUCIAN ADRIAN POP, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | A075 518 232 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

ORDER

Lucian Pop, a Romanian citizen, applied for cancellation of removal under
8 U.S.C. § 1229b(b)(2) on the ground that he was abused by his ex-wife, a U.S. citizen,
during their failed marriage. An immigration judge denied relief, and the Board of
Immigration Appeals upheld that decision. Pop then filed a motion for reconsideration
with the Board, which was denied. He now petitions for review of the order denying
that motion. Pop had argued in the motion that his sex explains why the Board did not
find that he was battered or subjected to extreme cruelty. *See id.* § 1229b(b)(2)(A)(i)(I).
If he were female, Pop insists, the Board would have concluded that he is a victim of
domestic violence. The Board's determination is factual and discretionary, however,
and thus I recommend dismissing the petition for review for lack of jurisdiction. Pop's
attempt to create jurisdiction by casting the Board's unfavorable decision as a denial of
due process is frivolous.

Pop entered the United States on a visitor's visa in 2000 and overstayed.  He
married Angelica Hernandez, a U.S. citizen, in 2003 and then applied for adjustment of
status based on the marriage.  In March 2009, while that application was pending,
Hernandez acknowledged that she had married Pop "for the sole purpose of helping
[him] obtain an immigration benefit."  The couple divorced the following month.

Six months later, in October 2009, immigration authorities told Pop that he no
longer was eligible for adjustment of status.  He was served with a Notice to Appear
charging him as removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United
States longer than permitted.  Pop conceded removability, but characterized himself as
the abused former spouse of a U.S. citizen and applied for "special rule" cancellation of
removal under § 1229b(b)(2).  Special-rule cancellation of removal allows the Attorney
General to cancel the removal of an alien if certain criteria are met, including that the
alien "has been battered or subjected to extreme cruelty" by a spouse or parent who is a
U.S. citizen and that "removal would result in extreme hardship to the alien, the alien's
child, or the alien's parent." 8 U.S.C. § 1229b(b)(2); *see Benaouicha v. Holder*, 600 F.3d 795,
797 (7th Cir. 2010); *Stepanovic v. Filip*, 554 F.3d 673, 677 (7th Cir. 2009).

At his hearing before an immigration judge, Pop testified about his former
marriage and the hardship he might encounter in Romania. He testified that he married
Hernandez because she was pregnant, and only later—more than a year after the child
was born—did she admit that he is not the father.  His work as a long-distance truck
driver kept Pop away from home for long stretches; the couple argued frequently when
Pop was home, and during those exchanges Hernandez screamed expletives, threw
things, scratched him, slapped him ("a few times" or "more than 10 times"), and

insulted his weight.  Pop also had submitted an affidavit averring that Hernandez pushed him and pulled his hair and told him that she cheated on him while he was on the road.  She never injured him physically, he testified, nor did he contact the police or seek a restraining order.  But, he insisted, the discord led him to contemplate suicide and seek counseling, and a psychotherapist had diagnosed him with anxiety and depression.  If forced to return to Romania, Pop testified, he would have difficulty supporting his parents financially and obtaining employment, psychological counseling, and dental care (he underwent extensive dental treatment in the United States).

The IJ found Pop removable and ineligible for special-rule cancellation of removal. The IJ found that Pop met the requirements of being physically present in the United States for a continuous period of three years and having good moral character. *See* 8 U.S.C. § 1229b(b)(2)(A)(ii), (iii).  But the IJ concluded that Pop had not demonstrated that his ex-wife battered or subjected him to extreme cruelty or that he would suffer extreme hardship if removed. *See id.* § 1229b(b)(2)(A)(i)(I), (v).  The IJ characterized Hernandez's actions as "abusive" but not "violent," and also noted that Pop had testified inconsistently about the number of times he was slapped and never said whether he was scratched more than once.  The IJ did credit Pop's testimony that he felt suicidal but concluded that "these incidents do not give rise to a mental injury within the meaning of the regulations."  And in rejecting Pop's assertion that removal would cause him extreme hardship, the IJ reasoned that Pop has parents and extended family in Romania and that he had not submitted any evidence corroborating his testimony that he would be unable to find employment or psychological counseling there.

The IJ's decision was issued in April 2011 and upheld by the Board in December 2012.  In the Board's view, Hernandez's conduct was "unkind and even cruel" but insufficient to warrant special-rule cancellation of removal.  The Board acknowledged Pop's testimony that Hernandez occasionally slapped or scratched him, but the Board reasoned that Pop "cast such mistreatment as minor" and that he "never required medical treatment."  The Board further agreed with the IJ that, even in light of Pop's medical and mental-health conditions, he had not shown that he would face extreme hardship if removed.

Pop timely filed a motion asking the Board to reconsider its decision. Yet that seven-page motion devotes just *three sentences* to Pop's conclusory accusation that the Board had rejected his claim of domestic abuse because of his sex.  Had he been a

woman, Pop asserted, the Board "clearly" would have found him eligible for cancellation of removal. Pop did not identify any language in the Board's decision, however, to support his accusation of discrimination. He contended further that, in assessing whether he would experience extreme hardship upon removal, the Board had failed to consider the emotional and psychological difficulties he would face in Romania.

In February 2013 the Board denied Pop's motion to reconsider, explaining that he had not identified "any material arguments that were overlooked or any material error of fact or law" in its earlier decision. Pop filed a petition for review in this court, and he asserted in his opening brief that the Board had ignored the contention that his sex explained its rejection of his claim of domestic abuse. The Attorney General moved to remand for the Board to address that contention. This court granted the government's unopposed motion in July 2013.

On remand the Board again denied Pop's motion to reconsider. In the Board's view, Pop had failed to identify "any material error in our decision to support his cursory claim regarding the application of a higher standard." Moreover, the Board continued, it had not applied a higher standard because of Pop's sex; instead, after considering the particular facts presented, the Board explained, it had concluded that Pop failed to prove that he qualified for relief from removal.

This court's review is limited to the denial of Pop's motion to reconsider because he did not timely petition for review of the underlying decision. *See Muratoski v. Holder*, 622 F.3d 824, 829–30 (7th Cir. 2010); *Asere v. Gonzales*, 439 F.3d 378, 380–81 (7th Cir. 2006). As with a denial of cancellation itself, this court lacks jurisdiction to review the denial of a motion to reconsider absent a legal or constitutional claim. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (D); *Cruz-Mayaho v. Holder*, 698 F.3d 574, 576–77 (7th Cir. 2012); *Stepanovic*, 554 F.3d at 678.

In this petition Pop asserts that the Board violated his right to due process by failing to meaningfully consider his argument that it discriminated against him because of his sex. In fact, though, Pop simply disagrees with the underlying outcome, as he insists that the determination that he was not battered or subjected to extreme cruelty is incorrect. But that determination is discretionary and not subject to this court's review. *See Stepanovic*, 554 F.3d at 680–81 ("The BIA applied the correct legal standard—extreme cruelty—and we are not authorized to review *how* the BIA exercised its discretion under that standard."); *Castro v. Holder*, 727 F.3d 125, 129–30 (1st Cir. 2013); *Johnson v. Attorney*

*Gen. of U.S.*, 602 F.3d 508, 510–12 (3d Cir. 2010). And to the extent that Pop purports to be raising a legal or constitutional claim, he does not point to anything in the Board's decision suggesting that it ignored his accusation that his application for cancellation of removal was treated differently because of his sex. Indeed, the Board acknowledged his claim of discrimination, but rejected it as unsubstantiated. This court has seen through numerous attempts to slap a legal or constitutional label on a disagreement with the agency's factual or discretionary determinations. *See, e.g., Pawlowska v. Holder*, 623 F.3d 1138, 1142 (7th Cir. 2010) (rejecting claim that agency "improperly balanced the equities" as "really a request to review the merits of a discretionary judgment"); *Gurrola-Rosales v. Holder*, 351 F. App'x 98, 100–01 (7th Cir. 2009); *Massena v. Mukasey*, 295 F. App'x 843, 845 (7th Cir. 2008); *Sharashidze v. Mukasey*, 542 F.3d 1177, 1179 (7th Cir. 2008); *Mitreva v. Mukasey*, 291 F. App'x 780, 782 (7th Cir. 2008); *Hanawi v. Gonzales*, 220 F. App'x 434, 435 (7th Cir. 2007); *Romanets v. Gonzales*, 242 F. App'x 359, 362 (7th Cir. 2007); *Akkaraju v. Ashcroft*, 118 F. App'x 90, 91–92 (7th Cir. 2004); *see also Barco-Sandoval v. Gonzales*, 516 F.3d 35, 40 (2d Cir. 2008). Here, too, the accusation of discrimination is no more than a label disguising an unreviewable challenge to a discretionary decision. Accordingly, I recommend dismissing the petition for review.