NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 26, 2017
Decided June 16, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-4042

| | |
|---|---|
| HECTOR AMAYA,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| *v.* | No. A206-304-553 |
| JEFFERSON B. SESSIONS III, Attorney<br>General of the United States,<br>    *Respondent*. | |

**O R D E R**

Hector Amaya, a 48-year-old citizen of Mexico, has been trying to avoid removal from the United States for some time. He failed to persuade the Board of Immigration Appeals that he ran a serious risk of torture if he were to be returned to Mexico, but he did not ask this court to review that decision. Instead, he returned to the Board with a motion to reconsider its adverse ruling. The Board stuck to its guns and denied relief. This time, Amaya did file a petition for review of the latter decision. In this situation, the only order before us is the Board's refusal to reconsider its first decision. Because

Amaya has not offered any reason to find error in that decision, we must deny his petition for review.

**I**

Amaya fled Mexico in 2006 because he feared that his life was threatened by gangs in his home town. He slipped into the United States through Arizona without authorization and found work as a farmhand grooming horses; he earned roughly $480 weekly at that job. He sent part of each check to his wife and three children, who remained in Lagos de Moreno, in the State of Jalisco, Mexico. Amaya came to the attention of the Department of Homeland Security in 2014 after he pleaded guilty to driving while intoxicated.

The government brought removal proceedings against Amaya for being present in this country without proper admission or parole, see 8 U.S.C. § 1182(a)(6)(A)(i). At a removal hearing, he conceded his removability but expressed his desire to apply for withholding of removal. Immigration Judge (IJ) Eliza Klein granted him a continuance to file the appropriate motion.

Amaya applied for relief on several grounds, but only one remains relevant at this point: that he is eligible for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) because he fears persecution from some unspecified gangs on account of his membership in the social group of Mexican citizens who may be perceived as possessing "greater economic means" after having lived in the United States, where "earnings are significantly higher" than in Mexico. Amaya supplemented his application with reports issued in 2013 by the U.S. Department of State and the Congressional Research Service that recount instances of extortionate kidnapping carried out by gangs across Mexico. The reports also mention the rise of a gang called the Jalisco Cartel–New Generation, which operates in his home town of Lagos de Moreno.

At the next hearing, which was before IJ Robert Vinikoor, Amaya testified that "dangerous" gangs in Lagos de Moreno intimidate residents and steal their belongings. While he still lived there, gang members on one occasion broke the windows of his home and on another, sat on his porch without his family's permission. The family contacted the police after these incidents, but each time officials ignored their pleas for help. Shortly after Amaya moved to the United States, his wife received a ransom call in which an unknown person claimed (falsely, as it turned out) that Amaya had been abducted and demanded money for his return. The gang members continued to phone threats to Amaya and his wife, calling the wife as recently as eight days before the hearing. Amaya reported that the gang members also insulted, shouted, and threw

stones at his wife. Amaya said that he feared that if he were removed to Mexico, he would be abducted by gang members who know he has lived in the United States and regard him as having money.

In August 2015, IJ Vinikoor denied Amaya's application for withholding and ordered him removed. The IJ first rejected his proposed social group as "too broad to meet the particularity and social distinction requirements" because it encompassed "all individuals returning to Mexico regardless of what area they return to and at what social economic level." Second, the IJ found that Amaya failed to establish a nexus between his membership in his alleged group and his fear of being targeted by gangs. Amaya, the IJ said, demonstrated not that he feared harm on account of group membership, but rather that "criminal elements in Mexico attack people for a criminal motive to gain money." Last, the IJ concluded that Amaya failed to establish that he faced likely persecution if he returned to Mexico because he had shown only a generalized threat of harm and minor harassment, rather than anything specific about himself. Indeed, as the IJ noted, Amaya's wife and children continue to reside in the town in relative safety.

Amaya appealed this adverse decision to the Board of Immigration Appeals, but on June 22, 2016, the Board adopted and affirmed the IJ's decision. The following month Amaya asked the Board to reconsider its affirmance. His motion repeated his argument that the record showed that he had "suffered past persecution or that he ha[d] a well-founded fear of future persecution on account of a protected ground." His brief to the Board, however, contained little elaboration and only generally referred to his oral testimony and affidavit. On October 31, 2016, the Board denied reconsideration. In that order, it explained that Amaya "failed to advance any specific argument regarding any error in our prior decision" and that it found "no error in law or fact, or argument that was overlooked, that would warrant further consideration."

One month later, Amaya petitioned this court to review the Board's order of October 31, 2016, denying reconsideration.

## II

Amaya's brief in this court focuses almost exclusively on the Board's order of June 22, in which it denied his application for withholding. He insists that the Board erred in this order, that he demonstrated his entitlement to that relief, and that the Board should have fixed this error in response to his motion to reconsider. The section headings of his brief reflect his disagreement with the underlying denial: "Mr. Amaya belongs to a particular social group"; "Mr. Amaya is likely to suffer persecution in

Mexico"; and "There is a nexus between Mr. Amaya's social group and the persecution he anticipates."

We do not, however, have jurisdiction to review the June 22 order, because Amaya did not file any petition for review (timely or otherwise) of that decision. Instead, he filed a motion to reconsider it with the Board. Such a motion does not have the effect of extending the 30-day filing deadline for seeking judicial review of the Board's underlying removal order. *Asere v. Gonzales*, 439 F.3d 378, 380 (7th Cir. 2006) (quoting *Stone v. INS*, 514 U.S. 386, 405 (1995)). This filing deadline is jurisdictional, see 8 U.S.C. § 1252(b)(1); *Asere*, 439 F.3d at 380. Someone such as Amaya who wants judicial review of a denial of withholding must ask for that review in a petition filed in this court within 30 days of the Board's decision. *He v. Holder*, 781 F.3d 880, 882 (7th Cir. 2015); *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004). Amaya did not file his petition until November 30, 2016, well beyond the 30-day period for challenging the Board's June 22, 2016, order. That order is thus not properly before us. Furthermore, because Amaya offered no reason why the Board erred by refusing to grant reconsideration (other than his repetition of the same arguments he presented at the earlier stage), he has by this time waived his opportunity to obtain review of the only decision over which this court has jurisdiction. See *He*, 781 F.3d at 882.

We add that this is not a case in which the waiver to make arguments addressed to the motion to reconsider made any real difference. "Reconsideration," we have said, "is not an appropriate forum for rehashing previously rejected arguments," *Ahmed*, 388 F.3d at 249 (quotation and citation omitted), and the Board therefore does not abuse its discretion by denying a motion to reconsider that does not raise additional legal contentions, point to a change of law, or highlight arguments or aspects of the case overlooked by the Board. See 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1); *Aparicio-Brito v. Lynch*, 824 F.3d 674, 688 (7th Cir. 2016); *Victor v. Holder*, 616 F.3d 705, 709 (7th Cir. 2010). Amaya did none of these things.

Had Amaya filed a timely petition seeking review of the June 22 order, there might have been something to discuss. Recent decisions of this court suggest that there is room for debate on the question whether the social group Amaya proposed meets the statutory standards. Compare *Rivera v. Lynch*, 845 F.3d 864, 865 (7th Cir. 2017) ("[W]e are dubious … of the proposition announced in some cases that the status of being a member of a group made up of individuals deported from the United States who, having lived in this country for many years, either have money or are believed to have money and have long-established ties to this country, and who for any of these reasons might be able to pay ransom, nevertheless can't be deemed members of a 'social group'

authorized to obtain relief from deportation because of threats to the life or safety of the group's members.") (citation and quotation omitted); with *Gutierrez v. Lynch*, 834 F.3d 800, 805–06 (7th Cir. 2016) ("[W]e recently declined to recognize a social group … 'made up of individuals deported from the United States who have money or who are perceived to have money, and who have family members in the United States who could pay ransom.'") (quoting *Dominguez-Pulido v. Lynch*, 821 F.3d 837, 844–45 (7th Cir. 2016)).

The outcome of that debate does not matter here, however, because Amaya's case ultimately turns not on the group that he proposed but on his failure to show a likelihood of persecution if he is returned to Mexico. True, his wife received ransom calls, but for those to constitute evidence of past or future persecution, the caller must have conveyed a credible and imminent threat of "grave physical harm," see *N.L.A. v. Holder*, 744 F.3d 425, 431 (7th Cir. 2014); *Pathmakanthan v. Holder*, 612 F.3d 618, 624 (7th Cir. 2010). The IJ's finding of a lack of "direct harm" to the family reflects his conclusion that the anonymous callers' threats were not credible. Amaya's only evidence that the threats were credible—the gang members' insults, shouts, and stone throwing—did not compel a finding of persecution. See *Bathula v. Holder*, 723 F.3d 889, 899–900 (7th Cir. 2013); *Ahmed v. Ashcroft*, 348 F.3d 611, 616–619 (7th Cir. 2003). And, we repeat, the merits of his claim are not properly before us in any event.

Because Amaya waived argument on the only issue this court has jurisdiction to decide and his points are otherwise without merit, we DENY his petition for review.