# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 05-1153 & 05-2663

GAZMEND GJECI,

*Petitioner*,

v.

ALBERTO GONZALES,

*Respondent*.

_____

Petitions for Review of Orders of the
Board of Immigration Appeals.
No. A77-819-707

_____

ARGUED JANUARY 17, 2006—DECIDED JUNE 15, 2006

_____

Before CUDAHY, POSNER, and WOOD, *Circuit Judges*.

CUDAHY, *Circuit Judge*. Gazmend Gjeci, an ethnic Albanian citizen of Kosovo, entered the United States illegally on May 30, 1998, and filed an administrative request for asylum a little less than one year later. His case has languished in the immigration courts since that initial filing; it was continued thirteen times—mostly at the behest of the government—over the course of four years before going to a merits hearing. Gjeci, who contends that he suffered grave mistreatment at the hands of the Serbian army during its occupation of Kosovo, argues that the immigration judge denied him due process in refusing to grant one more continuance so that he could obtain new

counsel and rebut a government report stating that docu-
ments tending to establish persecution were "not what they
purport[ed] to be." He further argues that the Board of
Immigration Appeals (BIA) abused its discretion in denying
his motion to reopen the case so that he could rebut that
government report. We agree that the merits proceeding
was fundamentally unfair and grant Gjeci's petition on due
process grounds. We need not reach the issue involving the
motion to reopen.

## I. Background

Although Gjeci's asylum claim is relatively straightfor-
ward, it has spawned a rather confusing record. In addition
to the sheer number of times the case has been delayed, two
different immigration judges participated in its adjudication
and at least four different lawyers have been involved in
Gjeci's representation in the seven years since he received
his notice to appear.

Gjeci's asylum claim centers primarily on his membership
in the Democratic League of Kosovo (LDK), a separatist
political party comprised of Kosovar ethnic Albanians, and
on the political realities of Kosovo in the late 1990s. His
application explains that before he left Kosovo, Serbian
officials arrested him four times, and beat and otherwise
harassed him on a number of occasions for his nationality
and political opinions. The application also states that
Serbian officials suspected Gjeci and his father of collecting
food supplies for the Kosovo Liberation Army (KLA), an
insurgent guerilla outfit that initially directed its attacks
against the Serbian police and later against Serbian
civilians. *See* HUMAN RIGHTS WATCH, UNDER ORDERS: WAR
CRIMES IN KOSOVO 17-60 (2001), *available at*
http://www.hrw.org/reports/2001/kosovo/. Gjeci explained
that he and his father, who used to run a café until it was

destroyed during the war, had gathered the food in an attempt to help villages under siege.

A central component of the evidence in the present case is a packet of seven documents that Gjeci offered to support his contention that he was persecuted in Kosovo. These documents (which, as we will see, are contested) include two subpoenas ordering Gjeci to appear in court for alleged anti-Serb activity, an order sentencing Gjeci to five months in prison for anti-government activity (including anti-government propaganda), two search warrants for the Gjeci home, an order sentencing Gjeci to three years in prison and, finally, a Yugoslavian identification card with his name and photograph on it.

Gjeci's asylum application began its slow journey through the immigration courts on July 9, 1999, when he was served with a notice to appear on July 30, 1999, for his removal proceedings. He appeared as directed and brought an interpreter with him but no lawyer. Immigration Judge Anthony D. Petrone continued his case to November 5, 1999. The record contains no transcript for that date. On February 4, 2000, Judge Petrone held a status conference and set a merits hearing date for July 18, 2000. Attorney Shefik Adrizi represented Gjeci at this hearing. On July 5, 2000, Gjeci gave the documents described above to the government for examination.

On July 18, 2000, Gjeci (represented by Adrizi) appeared before a new immigration judge (Carlos Cuevas). The government requested a continuance, indicating that it suspected some of Gjeci's documents might have been altered and that it intended to submit them to its Forensic Document Laboratory (FDL) for examination. Judge Cuevas stated that if the documents were authentic, he would be inclined to grant Gjeci's petition. He continued the hearing and set a status call for October 19, 2000. No transcript appears in the record for that day.

The next hearing took place on November 30, 2000. Bradley Harrington, an attorney from Adrizi's office, appeared on behalf of Gjeci, whose appearance had been waived. The government indicated that it was still investigating the authenticity of the documents and had nothing new to offer at that point. Judge Cuevas set the hearing over for another status conference on April 20, 2001. Adrizi appeared on Gjeci's behalf at that status hearing, and the government stated that it was still waiting for results from the FDL. The judge continued the hearing and set another status conference for November 29, 2001. At the November 29 call, the government indicated that it had given Adrizi the FDL report. Judge Cuevas told Adrizi that he assumed Gjeci needed time to prepare his defense, continued the hearing, and set a new status hearing for May 9, 2002.

On April 15, 2002, however, Judge Cuevas granted Adrizi's request to withdraw from his representation of Gjeci. Adrizi's motion cited irreconcilable differences between the two and included an affidavit from Gjeci authorizing Adrizi's withdrawal. The affidavit further indicated that Adrizi had returned Gjeci's file to his client. At this point, however, the government still possessed the documents whose authenticity is central to this case.

Alexandra Baranyk represented Gjeci at the next status hearing, which the judge held on May 8, 2002. The government stated at this hearing that it still had Gjeci's original documents. Baranyk made an oral motion for their return, but the government insisted that the request be in writing so that it did not tender anything not so requested. Since this hearing took place on a day when the judge had a very full schedule of hearings, he indicated that he did not want to spend time on this issue and told the parties to work it out. He then continued the case to September 5, 2002, for a document exchange. At the September 5 conference, however, the government told Judge Cuevas and Baranyk that it was not prepared to return the documents because it was unclear whether they had been photographed (in

accord with standard operating procedure). The judge continued the case again.

On January 9, 2003, the parties came together for another hearing, and the government returned the original documents to Baranyk. Although Gjeci was at this hearing, it does not appear that an interpreter was present, nor does it appear on the record that Gjeci understood that his documents had been returned to his counsel. The judge then set a status conference date for August 7, 2003. On July 31, 2003, however, Gjeci filed a motion for change of venue. The substance of this motion, which we transcribe in full since Baranyk and Judge Cuevas deemed it so significant, reads:

> Dear Judge Carlos Cueves, my name is Gazmend Gjeci and my A # 77 819 707, and I have a Hearing scheduled for a Master Calendar on August 7th, 2003 at 2:30pm. I would really like if possible for my case to be moved at 155 S Miami Ave, Miami FL 33130, since I will be moving in Florida as of August 4th. My job profile is as Marble Designer and I want to have the opportunity to have my own business dawn in Florida. I want to apologize for this late notice and I hope that you would take this under good consideration. I already have contacted an attorney in Miami to take my case. My new address in Florida is:
>
> [omitted]
>
> My old address is:
>
> [omitted]
>
> Thank you again for your understanding,
>
> Sincerely,
>
> Gazmend Gjeci
>
> [signature]

(R. 05-1153 at 320.)

As Gjeci noted in his motion, the judge had scheduled his status hearing for the afternoon of August 7. Baranyk, however, appeared before Judge Cuevas that morning on a different matter. After dealing with the other matter, Baranyk and Judge Cuevas turned to the Gjeci case, in which Baranyk had moved to withdraw in light of Gjeci's motion for change of venue. Judge Cuevas told Baranyk that he believed it was obvious that Gjeci was aware of the scheduling of the August 7 hearing and also, because Gjeci himself had filed a motion for change of venue instead of relying on Baranyk, that Gjeci was "taking matters into his [ ] own hands." Judge Cuevas did not discuss the status of Gjeci's case, nor did they discuss his file or original documents. When Gjeci arrived for his hearing alone at 2:30 p.m. on August 7, 2003, Judge Cuevas asked him—in English and with no interpreter—if he knew that Baranyk had withdrawn. Gjeci responded that he did. After that single question, Judge Cuevas moved on to the motion to change venue. After denying that motion, the judge asked Gjeci whether he understood, and Gjeci replied that he understood some. At that point, Judge Cuevas called an interpreter and again explained his reasons for denying the motion to change venue. Significantly, however, the judge never revisited the issue of Baranyk's withdrawal, and he asked Gjeci no questions beyond simply that first question in English about whether he knew that she had in fact withdrawn.

After denying the motion to change venue, Judge Cuevas proceeded to schedule Gjeci's merits hearing. He told Gjeci that the merits hearing would take place on August 26, 2003, and that at that point he would take testimony and conclude the case. The judge asked Gjeci if he understood, and Gjeci again replied that he did.

Gjeci arrived at the August 26 hearing again alone, although an Albanian interpreter was present. Judge Cuevas questioned Gjeci and ultimately concluded that his

story was not credible since he could not provide enough details about his alleged arrests and beatings (precise dates, for example) and since he could not rebut the FDL report indicating that his documents had been falsified.

Gjeci, however, was confused about this hearing from the start. He answered only one question before objecting, over and over again, that he had no lawyer with him, that he had not understood that this hearing would be his merits hearing (he testified he thought he was again up for a status conference), and that he had no idea where his original documents were. Despite his protests, Judge Cuevas refused to grant him a continuance and pressed onward, ultimately concluding that Gjeci had failed to meet his burden of proof. The documents played a significant part in Judge Cuevas's decision; he criticized Gjeci at length for failing to rebut the FDL report indicating that the documents were not what they purported to be. (R. 05-1153 at 52-55, 57-58, Aug. 26, 2003.)

After the August 26 hearing, Gjeci, via Miami attorney Lourdes Martinez-Esquivel, appealed Judge Cuevas's decision to the BIA, arguing that the judge had violated his due process rights by proceeding with the hearing. It appears from the record that the attorney never possessed Gjeci's documents and was therefore unable to pursue any challenge to the FDL report. The BIA summarily affirmed Judge Cuevas's decision. At some point after that, Gjeci retained his current counsel, Stephen Berman, who set about trying to locate Gjeci's documents. On March 9, 2005, Berman exchanged emails with Susan Fortino-Brown, an attorney in Baranyk's firm. Berman told her that, according to the hearing transcripts, her office should have Gjeci's documents. Fortino-Brown indicated that her firm would check the file but "[m]ost likely the service kept the originals though." (R. 05-2663 at 26, Mar. 9, 2005.) Fortino-Brown's firm later discovered that they had retained the documents for more than two years but finally sent them to Berman.

After receiving the documents, Gjeci retained a forensic document expert to examine the documents. That expert contradicted the FDL report, finding no conclusive proof of document tampering. The expert also noted that it was not appropriate for the FDL to determine that the documents were not authentic without comparing them to similar Kosovar documents. Gjeci filed a motion to reopen his case in order to submit this evidence. The BIA denied the motion, explaining that Judge Cuevas had not relied wholly on the FDL report in denying asylum. Specifically, the BIA noted that Gjeci's testimony was too unconvincing to support his claim. Gjeci filed petitions for review both of the due process appeal and of the denial of his motion to reopen.

## II.  Discussion

We review a claim of denial of due process de novo. *Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006); *Kerciku v. INS*, 314 F.3d 913, 917 (7th Cir. 2003). To prevail on a due process claim, an alien must show prejudice likely to impact the results of the proceedings. *Capric v. Ashcroft*, 355 F.3d 1075, 1087-88 (7th Cir. 2004). Because the BIA summarily affirmed the immigration judge's opinion with respect to due process, the immigration judge's opinion constitutes the final agency determination. *Kllokoqi v. Gonzales*, 439 F.3d 336, 341 (7th Cir. 2005).

Removal proceedings must be fundamentally fair and allow an alien a reasonable opportunity to present evidence. *Kerciku*, 314 F.3d at 917-18. Although much about the way Gjeci's case was handled is unsettling, the central due process error stems from the way in which Baranyk was permitted to withdraw from Gjeci's representation. We accordingly focus our discussion there and on the conse-quences of that withdrawal. We find that Baranyk's withdrawal—coupled with her retention of Gjeci's docu-

ments and the immigration judge's refusal to grant Gjeci a continuance when it became apparent that Gjeci did not fully understand the consequences of Baranyk's withdrawal and would not be able to evaluate the FDL report—deprived Gjeci of a fundamentally fair proceeding.

It is well settled that, while aliens have no Sixth Amendment right to counsel, they do enjoy a statutory right to retain counsel. 8 U.S.C. § 1362 (2006); *Ambati v. Reno*, 233 F.3d 1054, 1061 (7th Cir. 2000). This right is important to the fairness of removal proceedings, and immigration judges commonly grant aliens an initial continuance to secure representation, as Judge Petrone did here. *See* RICHARD D. STEEL, STEEL ON IMMIGRATION LAW 2D § 14.5 (2005). Related to this statutory right are the rules that an alien must *knowingly* waive representation, *e.g.*, *Ramirez v. INS*, 550 F.2d 560, 565 (9th Cir. 1977), and that immigration judges must take pains to ensure that an alien's rights are protected when counsel wishes to withdraw. *E.g.*, *Al Khouri v. Ashcroft*, 362 F.3d 461, 464-65 (8th Cir. 2004); U.S. DEP'T OF JUSTICE, EXEC. OFFICE OF IMM. REV., IMMIGRATION JUDGE BENCHBOOK I:8:I.D.5 (2001) [hereinafter BENCHBOOK].

In the present case, both Baranyk and Judge Cuevas inferred from Gjeci's pro se motion to change venue an intent to take matters into his own hands and to proceed without Baranyk. But this conclusion was not based on direct questioning, and there was little effort to verify Gjeci's intent. Drawing inferences from Gjeci's pro se motion is particularly troubling, since he was represented by counsel. *See, e.g.*, *Abdullah v. United States*, 240 F.3d 683, 686 (8th Cir. 2001) (holding that a represented party in a criminal action is generally not entitled to have his pro se motions reviewed).

Compounding questions involving the inferences here are the surrounding circumstances. Immigration judges

may, of course, grant an attorney's motion to withdraw as a counsel of record upon an oral or written motion. 8 C.F.R. § 1003.17(b) (2006). Grounds for motions to withdraw include (among other things) a difference of opinion over the direction of the case, an alien's failure to cooperate with the attorney in preparing the case and an alien's failure to keep the attorney apprised of his whereabouts or his failure to appear for hearings. *E.g.*, *In re Rosales*, 19 I.&N. Dec. 655, 656-57 (BIA 1988).

But, although judges generally have wide discretion to grant or deny motions to withdraw, they must bear in mind their duty to protect an alien's rights. *See* BENCHBOOK, at I:8:I.D.5; *see also Al Khouri*, 362 F.3d at 464-65 (discussing an immigration judge's duties when an alien appears pro se). Immigration judges must, of course, be sure that aliens are aware of their hearing dates, which Judge Cuevas was able to infer here. But beyond this, the judge took no other steps to protect the alien's rights. Gjeci was not present, although he was due to appear in a few hours. Nothing in the record suggests Gjeci knew that Baranyk was withdrawing but for a single after-the-fact question in untranslated English. Judge Cuevas made no attempt to ascertain the status of the case before granting Baranyk's motion, especially including the status of the documents that all parties regarded as central to Gjeci's petition. The judge asked no questions about whether Baranyk's client communicated any desire to proceed without her representation in the case. And importantly, the judge did not order Baranyk to return Gjeci's documents.

When Gjeci arrived for his hearing a few hours later, the judge asked him no questions about whether he actually wanted to proceed without Baranyk. The judge did not discuss the critical consequences of the counsel's withdrawal (that Gjeci, for example, would be responsible for recovering the documents and rebutting the FDL report) or what Baranyk's reasons were for the withdrawal (which

would have afforded Gjeci the opportunity to explain whether he understood what he was doing when his filed his pro se motion). The judge set the merits hearing over for August 26, 2003, but spent little time explaining to Gjeci that Gjeci would need to put on evidence that day if he came without a lawyer. He told Gjeci that the government had given Gjeci and his prior attorney a report indicating that the documents had been falsified and that he had "a right to bring witnesses or evidence, including documents to rebut or [ ] to challenge the Government's submission" against him. Yet he failed to ask the next logical question (indeed, the critical question that would protect Gjeci's rights): if he had the documents themselves or knew where they were.[1]

To be sure, a lawyer's professional responsibility upon withdrawal includes the duty to take reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving notice to the client, allowing time for the employment of other counsel, and delivering to the client all papers and property to which the client is entitled. MODEL RULES OF PROF'L CONDUCT R. 1.16(d) (2004). None of this happened here, and we simply cannot understand why Baranyk apparently made no effort to have Gjeci's documents examined and then improperly retained them for over two years. Gjeci may have had a colorable claim for ineffective assistance of counsel, had he followed the procedures of *In re Lozada*. 19 I.&N. Dec. 637, 639 (1988); *see also Stroe v. INS*, 256 F.3d 498, 501-02 (7th Cir. 2001). But any potential errors on Baranyk's part do not undermine Gjeci's due process claims.

---

[1] Finding it improper that the immigration judge did not ask questions along these lines imposes no onerous requirements on immigration judges. It requires them only to perform their duty of protecting an alien's rights—and asks them to do what the immigration judge benchbook recommends in entertaining motions to withdraw: use common sense. BENCHBOOK, at I:8:I.D.5.

The errors surrounding Baranyk's withdrawal were compounded by Judge Cuevas's refusal to continue Gjeci's merits hearing when it became obvious that Gjeci had not understood what happened with respect to the withdrawal. Although an immigration judge's decision to grant or deny a continuance will generally be upheld, *see Cordoba-Chavez v. INS*, 946 F.2d 1244, 1246 (7th Cir. 1991), an unyielding insistence on expeditiousness may, in some circumstances, violate an alien's rights. *See Castaneda-Delgado v. INS*, 525 F.2d 1295, 1300 (7th Cir. 1975). The problems surrounding the withdrawal so contaminated this hearing that insisting that it continue without explanation deprived Gjeci of his right to a fundamentally fair hearing.

The record is rife with exchanges indicating that Gjeci had not understood the consequences of Baranyk's withdrawal, particularly with regard to the documents. The following examples are indicative of the confusion:

Judge:  All right. We, we will move ahead with your case. . . .

Gjeci:  This is the hearing, because I am now—I haven't been prepared for the hearing. I didn't think we would go forward. Because I am trying to get a lawyer.

Judge:  Sir, you're out of time for a lawyer. I told you last time I was not going to continue your case for a lawyer.[2]

Gjeci:  I have talked to a lawyer and please, if you will continue, and the next time I will come here with a lawyer. Because I have talked to a lawyer already.

(R. 05-1153 at 134-35.)

* * *

---

[2] We note that the transcript of the August 7 hearing says nothing this clear or vehement.

Gjeci:   I know that, but without an attorney I cannot speak, because the attorney will tell me how the procedures will go, and what is going to happen, and how, which one will follow the other. And the other reason is that all the attorneys that I have contact, they were waiting to receive the original documents that I have submitted to the Government, and they were never able to receive the documents, the original documents from the Government.

Government:

Judge, for the record, the original documents were handed over to counsel's attorney, in open Court.

Judge:   [to interpreter] You want to tell him.

Gjeci:   I don't know who has my original documents. I have no clue who that the original documents has been taken by an attorney.

(R. 05-1153 at 147-48.)

It is plain that Gjeci did not understand that the hearing under scrutiny was to be a merits hearing. It is particularly plain that he did not understand that he would need to retrieve his documents and organize his rebuttal. Judge Cuevas had an opportunity to undo the damage of Baranyk's improper withdrawal by continuing the case. Failing to do so here denied Gjeci a fundamentally fair hearing.

In addition, the weight that Judge Cuevas placed on the unrebutted evidence that the documents had been falsified and his earlier comments that he would be inclined to grant Gjeci's asylum petition if they were deemed authentic satisfy the requirement that Gjeci demonstrate prejudice. (R. 05-1153 at 69) ("So, my feeling is that, if he's from a bad part [ ] of the world, and as I said, in the absence of any

conclusive documentation on the validity of the documents, I probably want to grant [Gjeci's petition].") He need not show with certainty that his proceedings would have come out differently but for the error. He need only show that the error had the potential to affect the outcome of the hearing, which he has certainly done here. *Ambati*, 233 F.3d at 1061.

We note in closing that the BIA's conclusion that Judge Cuevas rested his decision on Gjeci's unconvincing testimony regarding his alleged persecution fails to address Gjeci's repeated claims that he had been caught unaware by the vagaries of his hearing and that he was not sufficiently prepared. We do not suggest, of course, that aliens can make colorable due process claims simply by asserting on the record that they were unaware of the procedure or that they were unprepared. The critical difference here is that the immigration judge permitted the alien's counsel to withdraw and retain the most important evidence in the case without ever ascertaining that the alien understood that he would need to prepare his case going forward. It is impossible for us to know whether Gjeci's documents are authentic on this record. But he should have a fair opportunity to rebut a report indicating they are not before an immigration judge willing to listen.

## III. Conclusion

In sum, we conclude that proceeding with a merits hearing on August 26, 2003, deprived Gjeci of a fundamentally fair hearing. Because we conclude that the merits hearing denied Gjeci due process, we need not address the argument that the BIA abused its discretion in refusing to reopen the case. Accordingly, we GRANT Gjeci's petition for review and REMAND the case for proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*