In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-1401

LONG-GANG LIN,[1]

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A200-112-626

ARGUED SEPTEMBER 28, 2010—DECIDED DECEMBER 23, 2010

Before EASTERBROOK, *Chief Judge*, and SYKES and TINDER,
*Circuit Judges*.

TINDER, *Circuit Judge.* Long-Gang Lin sought asylum
and withholding of removal based on his wife's alleged

---

[1] Petitioner's first and last names were transposed on his
Notice to Appear and in the Board's decision. We have cor-
rected this to show his name as "Long-Gang Lin." The docket
should be corrected as well.

forced abortion. An Immigration Judge ("IJ") denied relief based on an adverse credibility determination. The Board of Immigration Appeals ("Board") affirmed. Lin petitions for review of the Board's decision, contending that the Board erred in affirming the IJ's adverse credibility determination. He also argues that the IJ and Board failed to recognize the ineffective assistance of his counsel and that he was denied his right to a fair hearing. Lastly, he claims that the IJ should have inquired into his competency to testify.

## I. BACKGROUND

Lin is a native and citizen of the People's Republic of China. He entered the United States on August 25, 2005. The Department of Homeland Security ("DHS") served him with a Notice to Appear and charged that he was subject to removal. Lin admitted the allegations in the Notice and applied for asylum and withholding of removal. He submitted supporting documentation, including purported abortion and sterilization certificates for his wife. DHS submitted Forensic Document Laboratory ("FDL") findings concerning the certificates, and the IJ continued the proceedings to allow Lin to respond. Thereafter, Lin submitted a letter from his attorney challenging the FDL findings.

On April 16, 2008, the IJ held a hearing at which Lin testified. He stated that the documentation attached to his asylum application was genuine. He said that he had reviewed the contents of his application and that everything in it was true. Lin was born in Fuzhou City, Fujian

Province, China in 1967 and married Yong Chen in 1996. They have a daughter who was born in 2000. Lin stated that he had a second-grade education and could not read or write. He worked at a thermos factory from 1987 through 1996, when he was fired for being "disruptive." He explained that he would "sometimes hav[e] troubles with [his] co-workers, like . . . coming to blows." In 1996, Lin opened a diner but was forced to close it in 2001 to make room for new development. Neither Lin nor his wife has worked since 2001; they have supported themselves and their daughter on their savings. Lin's wife still lives in Fuzhou.

Lin said that he and his wife wanted to have a second child because it had been "quite a while" since their daughter's birth. He "knew a little bit" about China's one child policy, including that they had to apply for permission to have a second child. They did not do so. He also knew that if they had a second child, they would have to pay a social compensation fee which they could not afford. According to Lin, his wife complied with the requisite quarterly pregnancy tests, but he had no documentation to prove it. He claimed that he told her not to go for the check-ups, but she did because the neighborhood birth control office told her she had to report.

Lin testified that his wife became pregnant with their second child in September 2004 and that on September 10, people from the neighborhood committee came to their house and discovered the pregnancy. He said that the committee conducted random checks and checks

when they suspected someone might be violating the family planning laws. When questioned regarding how far along his wife was in the pregnancy, Lin stated that she was a little more than three months pregnant and that she looked pregnant. According to Lin, the members of the committee took his wife by force to the neighborhood committee office. He claimed he tried to resist and they "came to some physical contact"—"almost" to the point of "using fists." He did not injure anyone, but said he threatened to do so. He added that they pushed each other, but did not knock each other down. Lin stated that he followed his wife to the neighborhood committee office where there was more "pushing around." They were in the office for about twenty minutes. Lin claimed his wife was eventually taken away to a local hospital to have an abortion. When asked if she had any operation other than the abortion, he responded that she had not. He explained that he did not go to the hospital with his wife because the committee members told him that it was his "wife's . . . problem only" and if he followed her, he would be "in trouble too." The IJ asked Lin about the purpose of the stop at the committee office on the way to the hospital. Lin could offer no explanation other than that "they took my wife there."

Lin later stated that the abortion occurred on December 25, 2005. Subsequently, when asked when his wife was taken to the hospital, he answered, "December 5, 2003." The IJ asked Lin if he was sure about the date, and Lin replied that the abortion occurred in December 2004. He then claimed that "the matter that hap-

pened at the hospital . . . happened the next day." The IJ sought clarification of the dates and events. Lin said that the people from the neighborhood committee came to his house "August 20 something 2004." The IJ indicated that Lin was giving different answers to the same question and again asked him for the date on which the neighborhood committee went to his house and discovered his wife's pregnancy. Lin said, "2004." The IJ asked him to be more specific, and Lin claimed that "they discover[ed] the pregnancy in May 2004." This prompted the IJ to ask how the members of the committee discovered that his wife was pregnant in May 2004. Lin claimed that her pregnancy was visible at that time. The IJ pressed further on the date, and Lin said that the officials came to his house in May to "do [a] regular check" for compliance at which time his wife was not pregnant. He stated that they came again in September 2004 and found her pregnant. The IJ asked if a pregnancy test was administered. Lin said that ultrasound technology was used in a hospital. The IJ asked when the abortion occurred; Lin answered, "December the 5th, 2004." The IJ inquired whether Lin knew that was the third date he had given, and Lin explained that he had remembered that the date was December 5, 2004. According to Lin, his wife did not agree to the abortion but that did not "matter because the decision was made by the committee."

Lin stated that he had an x-ray report to prove that his wife had an abortion. He claimed the doctor sent the report to his house in China and his wife mailed it to him. He claimed that the report said that pregnancy is

forbidden and his wife is not allowed to become pregnant. When the IJ asked if anything was done to prevent his wife from becoming pregnant again, Lin said, "They didn't do anything. They just told us that no pregnancy anymore." Lin testified that both he and his wife were physically capable of having another child.

The IJ asked Lin why he feared returning to China. Lin responded that he "would be unemployed" and he could not find work because he was uneducated and illiterate. Lin admitted that this was part of the reason he came to the United States and claimed the other part was the loss of his second child.

As mentioned, Lin submitted documentation to support his claim. In his political asylum statement submitted with his application, Lin wrote that his wife became pregnant for the second time in September 2004 and that on December 5, 2004, the family planning officials came to their home and took her to the hospital to have an abortion and sterilization. Lin had a letter and translation of a radiology examination report, indicating that Yong Chen, his wife, had both fallopian tubes sterilized. He also submitted a letter from his wife in which she said that she became pregnant the second time in September 2004 and that she was taken on December 5 to a hospital to have a forced abortion and sterilization. She claimed that she received the abortion and sterilization certificates from the officials of the neighborhood family planning office later that month. Finally, Lin provided translated certificates indicating that an abortion and sterilization were per-

formed on Yong Chen on December 5, 2004. DHS submitted the findings of a forensic document examiner who determined that "[i]t is unlikely that [the abortion and sterilization certificates] are genuine." Several reasons were given to support this determination. Lin responded with a letter from his then-attorney Li Nan Chiang.

On April 16, 2008, the IJ issued an oral decision. Based on Lin's concession of removability and admission of allegations in the Notice to Appear, the IJ found him removable as charged. She then considered his application for asylum and withholding of removal. The IJ took into account Lin's "limited education and alleged functional illiteracy" and his demeanor while testifying and found him not credible. She noted that he "was unable to provide the most basic of information that forms the very foundation of his claim" and determined that "[t]he inconsistencies in his testimony are so significant . . . that they warrant this finding of incredibility."

The IJ gave several reasons for her adverse credibility determination. First, Lin was unable to provide a plausible explanation as to how the members of the neighborhood committee immediately determined that his wife was pregnant. The IJ also relied on the "substantial inconsistencies" in the dates for the abortion that Lin provided, noting he had given three different dates. The IJ said that she did not find "anything in [Lin's] behavior, demeanor, background, et cetera to say that he cannot remember simple facts." Even more important to the IJ, though, was that Lin's written statements indicated his wife had not only a forced abortion but

also an involuntary sterilization; however, Lin never mentioned the latter procedure while testifying, even when asked if anything other than the abortion was done to her. Lin even testified that he and his wife were physically able to have another child. The IJ was also troubled by the FDL report that found the abortion and sterilization certificates suspect, but she did not give great weight to that report or counsel's reply thereto. She found that the certificates did not deserve full evidentiary weight in part because Lin failed to provide very detailed testimony, and none about the sterilization. In addition, the IJ noted Lin's testimony that he had "physical contact" with the family planning officials, which she viewed with skepticism because his written materials made no mention of it. Having found Lin not credible, the IJ denied his application for asylum and withholding of removal and ordered him removed to China.

Lin appealed to the Board. He asserted that the IJ "gave undue weight to the adverse FDL findings." He also claimed that given his second-grade education and "brain injuries" from working at a state-owned enterprise in China, the IJ should have inquired into and given weight "to such injuries as persecution." In an attached affidavit, Lin added that he had worked in a factory where he was exposed to mercury sprayed on thermos bottles and that both his parents died from cancer after having worked at the factory "all their lives."

On January 25, 2010, the Board summarily affirmed the IJ's decision. The Board noted that in a July 28, 2009,

decision it had suspended Lin's former counsel Li Nan Chang from practicing before the Board, the immigration courts, and the DHS. Because Lin had retained new counsel who filed the appeal and appellate brief, the Board proceeded to decide the appeal. Lin petitioned for review with this court.

## II. ANALYSIS

Lin raises several arguments on appeal. He first argues that the IJ erred in placing insufficient weight on the certificates of his wife's abortion and sterilization procedures based on perceived deficiencies and lack of detail in his testimony. He claims that his documentation "should have served the REAL ID purpose of corroborating otherwise incredible testimony." He argues that the IJ erred in failing to probe into his background and alleged exposure to harmful chemicals and that the Board erred in not addressing this alleged explanation for the inconsistencies in his testimony. He also asserts that the IJ and Board erred in failing to recognize the ineffective assistance of his counsel. Finally, he claims that the IJ erred in failing to determine whether he was competent to testify.

Where, as here, the Board summarily affirms, we review the IJ's decision. *Juarez v. Holder*, 599 F.3d 560, 564 (7th Cir. 2010). Our review is deferential and we "ask only whether [the decision] is supported by 'reasonable, substantial, and probative evidence on the record considered as a whole.'" *Lin v. Holder*, 620 F.3d 807, 810 (7th Cir. 2010) (quoting *Toptchev v. I.N.S.*, 295 F.3d 714, 720

(7th Cir. 2002)). We "will reverse only if the evidence compels a contrary conclusion." *Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010).

In order to establish eligibility for asylum and with-holding of removal, Lin bears the burden of proving that he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(b)(1)(B)(i); *Lin*, 620 F.3d at 810. Thus, he had to show past persecution or a well-founded fear of persecution on account of his race, religion, nationality, membership in a protected social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). He alleges persecution based on China's coercive family planning polices and alleged practices committed against his wife, on account of his political opinion. Lin may prove that he is a refugee based on his own testimony alone if the IJ finds it is credible. 8 U.S.C. § 1158(b)(1)(B)(ii). However, as the IJ recognized, "[g]iven the importance of the applicant's credibility in asylum proceedings, 'an adverse credibility finding will doom the applicant's claimed eligibility as a 'refugee.'" *Hassan v. Holder*, 571 F.3d 631, 637 (7th Cir. 2009) (quoting *Musollari v. Mukasey*, 545 F.3d 505, 508-09 (7th Cir. 2008)).

Before we evaluate the adverse credibility determination, we need to address some of the government's arguments. The government first argues that we may not consider Lin's unexhausted claims that: (1) his counsel was ineffective; (2) the IJ should not have proceeded with the hearing because of counsel's ineffective assistance; (3) the IJ should have determined Lin's competency to testify; (4) the IJ erred in its findings regarding Lin's

belated claim of physical contact; (5) the FDL report's suspicions of the sterilization certificate were baseless; and (6) the weight given to the abortion and sterilization certificates contradicted the purpose of the REAL ID Act—allegedly to corroborate otherwise incredible testimony. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right."); *Muratoski v. Holder*, 622 F.3d 824, 830-31 (7th Cir. 2010) (denying petition for review where alien failed to exhaust administrative remedies). "'The duty to exhaust includes the obligation to first present to the [Board] any argument against the removal order as to which the Board is empowered to grant the alien meaningful relief.'" *Muratoski*, 622 F.3d at 830 (quoting *Ghaffar v. Mukasey*, 551 F.3d 651, 654 (7th Cir. 2008)). Lin's failure to exhaust the claims identified above prevents us from reviewing them.[2]

The government contends that the exhaustion requirement is jurisdictional. We have said that it is not. *See, e.g., Issaq v. Holder*, 617 F.3d 962, 968 (7th Cir. 2010)

---

[2] The failure to exhaust may be excused when an alien raises a constitutional claim that the Board "would [have been] powerless to address," but such failure is not excused when the claim is "based on procedural failings that the [Board]" could have remedied. *Pjetri v. Gonzales*, 468 F.3d 478, 481 (7th Cir. 2006). Lin's due process claims are the type of claims that the Board could have addressed—the Board could have remanded the case to the IJ for another hearing; thus, the exception does not apply.

(failure to exhaust "is not . . . a jurisdictional rule in the strict sense . . . [but] a case-processing rule that limits the arguments available to an alien in this court").

The government next argues that Lin has waived several challenges to the IJ's decision, including most of the reasons for the adverse credibility finding as well as his claim that the weight given to the alleged abortion and sterilization certificates contradicts the purpose of the REAL ID Act. The "statement of facts and procedural history" section of Lin's opening brief mentions the following reasons supporting the IJ's credibility determination: (1) Lin was unable to provide a plausible explanation as to how the neighborhood committee members determined that his wife was pregnant; (2) Lin's written statements indicated his wife was forced to undergo sterilization, but Lin never mentioned it when testifying; and (3) Lin first claimed that he had "physical contact" with the family planning officials when testifying. But the brief only mentions these in passing. Merely mentioning that the IJ made these findings without advancing any argument supported by citations to relevant authority is insufficient to challenge those findings on appeal. *See, e.g.*, *Haxhiu v. Mukasey*, 519 F.3d 685, 691 (7th Cir. 2008) ("Federal Rule of Appellate Procedure 28 requires an argument consisting of more than a generalized assertion of error, with citations to supporting authority.") (quotations and citations omitted); *Asere v. Gonzales*, 439 F.3d 378, 381 (7th Cir. 2006). Lin has not made any cogent argument to challenge these reasons for the adverse credibility finding. Thus, he has waived any challenge to them. But even if

he had not waived these challenges, we would not disturb the IJ's credibility finding for the reasons we discuss later.

Lin has waived other arguments too. He claims that the abortion and sterilization certificates he submitted "should have served the REAL ID Act's purpose of corroborating otherwise incredible testimony" and that the IJ's decision to give them less weight because of the inconsistencies in his testimony contravenes the purpose of the Act. But he offers no authority to support these arguments. The failure to adequately develop and support these arguments results in waiver. *See Jin v. Holder*, 572 F.3d 392, 397 (7th Cir. 2009); *Asere*, 439 F.3d at 381 (citing *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 529 (7th Cir. 2003) ("It is not enough for [plaintiff] merely to refer generally to these actions in her statement of facts; . . . she must identify the legal issue, raise it in the argument section of her brief, and support her argument with pertinent authority."). In any event, "under the REAL ID Act, corroborating evidence may be required even if the applicant is credible." *Rapheal v. Mukasey*, 533 F.3d 521, 527 (7th Cir. 2008) (citing 8 U.S.C. § 1158(b)(1)(B)(ii)).

Turning to the IJ's adverse credibility determination, Lin's only argument is that the IJ placed insufficient weight on the abortion and sterilization certificates. Yet the IJ was entitled to give them whatever weight she thought they deserved in light of all the evidence. *See Weng v. Holder*, 593 F.3d 66, 72 & n.5 (1st Cir. 2010) (concluding that documentary evidence did not compel a

finding of persecution "especially in the absence of credible testimony on [the alien's] part"); *Feto v. Gonzales*, 433 F.3d 907, 911 (7th Cir. 2006) (stating that the IJ was entitled to weigh documentary evidence along with other evidence in the case). The IJ reasoned that the certificates were "not entitled to full evidentiary weight" because Lin "did not provide very detailed testimony," particularly with respect to his wife's sterilization. A lack of detail is a "major clue" that someone is lying. *Mitondo v. Mukasey*, 523 F.3d 784, 788-89 (7th Cir. 2008). Indeed, Lin did not provide much detail about his wife's abortion, sterilization, or the events surrounding these procedures. Even if the certificates should have been given more weight, they contain nothing to suggest that these procedures were forced upon Lin's wife. We find no reason to disturb the IJ's weighing of the certificates.

And in the end, even Lin acknowledges the discrepancies and inconsistencies in his testimony and supporting documents. Indeed, he notes the existence of a "remarkable number of inconsistencies" in his testimony. Yet he offers no argument why such unexplained discrepancies could not support the IJ's adverse credibility determination. Any such argument is therefore waived. *Jin*, 572 F.3d at 397 & n.3. (He attempts to offer an explanation, but that effort fails, as we address later.) Besides, an IJ may properly base a credibility determination on "the consistency between the applicant's . . . written and oral statements . . . [and] the internal consistency of each such statement . . . ." 8 U.S.C. § 1158(b)(1)(B)(iii); *see, e.g., Hassan*, 571 F.3d at 637 ("[T]he

IJ may rely on inconsistencies between the applicant's hearing testimony and earlier statements."). Further, the addition of factual assertions in an applicant's testimony that were not included in the written asylum application can support an adverse credibility finding. *Hassan*, 571 F.3d at 638-39 (deferring to adverse credibility determination where alien testified about four events of persecution but omitted them from his written application); *Xiao v. Mukasey*, 547 F.3d 712, 717 (7th Cir. 2008) (upholding adverse credibility finding where alien failed to disclose the abortion during her airport interview and credible fear interview); *Song Wang v. Keisler*, 505 F.3d 615, 621 (7th Cir. 2007) (upholding adverse credibility determination where alien based his asylum application on his wife's sterilization and omitted mention of a forced abortion and of a fight that occurred at the hospital before his wife had an abortion).

Lin not only gave inconsistent dates for his wife's abortion but also omitted any mention of her sterilization during his testimony. The IJ reasonably could have expected that Lin would testify about events that go to the heart of his claim. *See Song Wang*, 505 F.3d at 621. He even contradicted his claim by testifying that she was physically capable of having children. In addition, Lin's claim of physical contact with the family planning officials first surfaced during his testimony. Further, Lin was unable to provide significant details about the abortion, sterilization, and the physical contact at the neighborhood committee office. He failed to offer an adequate and consistent explanation as to how the family planning officials knew his wife was

pregnant, and he had no explanation for the brief stop at the neighborhood office. These were just some of the inconsistencies; there were more. Lin bore the burden of explaining to the IJ's satisfaction the inconsistencies in his testimony and documents—some of which go to the heart of his claim. *See Fedosseeva v. Gonzales*, 492 F.3d 840, 846 (7th Cir. 2007). He did not do so. Even Lin acknowledges that "a single inconsistency going to the heart of an asylum claim may be grounds for an adverse credibility determination." (Br. 16 citing *Huang v. Gonzales*, 453 F.3d 942, 945-46 (7th Cir. 2006)). Lin has given us no reason to disturb the IJ's adverse credibility finding.

Lin argues that he did not have an opportunity for a full and fair hearing. He submits that the IJ should have probed into his background and exposure to harmful chemicals, which he claims "wreaked havoc on [his] cognitive abilities." He complains that the Board did not address this explanation for his inconsistent testimony. He also claims that the IJ should not have proceeded with the hearing given counsel's alleged obvious ineffectiveness.

Due process requires that an alien be afforded a meaningful opportunity to present a claim, *Barradas v. Holder*, 582 F.3d 754, 767 (7th Cir. 2009); *Capric v. Ashcroft*, 355 F.3d 1075, 1088-89 (7th Cir. 2004) (emphasizing it is the opportunity to present a claim that is protected), but "imposes no obligation to ensure that the alien actually makes a meaningful presentation," *Capric*, 355 F.3d 1089. We examine "whether, given the totality of the circumstances, [the alien] had a full and fair opportunity to put

on his case." *Barradas*, 582 F.3d at 767. Lin had such an opportunity. The record does not suggest that the IJ interfered with Lin's ability to present his claim. Lin could have testified about his claimed exposure to harmful chemicals, but he omitted any mention of this in his testimony and asylum application. Because he never brought this matter to the IJ's attention, the IJ had no reason to suspect that an alleged chemical exposure caused Lin's inability to remember simple details. There certainly is no basis for concluding that Lin's testimony that he worked ten years in a factory manufacturing thermos bottles should have been a clue to the IJ that he was exposed to harmful chemicals or that those chemicals caused a brain injury which affected his ability to testify truthfully or accurately. And absent notice of Lin's alleged exposure to harmful chemicals, there was no reason for the IJ to inquire further into the matter.

Lin also had the opportunity to explain the inconsistencies in his testimony to the Board. But the Board is not permitted to engage in fact-finding on appeal. *See Figueras v. Holder*, 574 F.3d 434, 437 (7th Cir. 2009); 8 C.F.R. § 1003.1(d)(3)(iv). Lin did not move to remand to the IJ or reopen the proceedings for consideration of evidence of his background and exposure to harmful chemicals. Thus, the Board did not err in declining to address Lin's proffered explanation for the inconsistencies in his testimony.

Regarding whether the IJ should have proceeded with the hearing given the "obvious" ineffective assistance of Lin's counsel, Lin did not exhaust this claim. That

barrier aside, Lin still could not prevail. He argues that his case is like *Gjeci v. Gonzales*, 451 F.3d 416, 424 (7th Cir. 2006), where we concluded that by proceeding with the merits hearing, the IJ deprived the alien of a fundamentally fair hearing. But that case is distinguishable: Gjeci's counsel withdrew; the IJ refused to grant a continuance to allow Gjeci to obtain new counsel; Gjeci's counsel retained documents central to Gjeci's claim; and Gjeci did not fully comprehend the consequences of his counsel's withdrawal. *Id.* at 421-24. Furthermore, the record demonstrated prejudice—the IJ placed great weight on the evidence that the documents had been falsified and said he would have been inclined to grant Gjeci's petition if the documents were authentic. *Id.* at 420, 423. Here, Lin was represented by counsel during the proceedings; the IJ granted him a continuance to allow a response to the FDL findings and his counsel submitted a response; and the IJ did not place great weight on the findings.

Lin further claims that it was highly unlikely that his counsel was capable of providing anything other than incompetent representation at the time of the IJ's hearing. He first contends that the lack of compliance with the re-fingerprinting order was his counsel's fault. The IJ noted that she did not serve written instructions about the re-fingerprinting. Anyway, she did not deem Lin's claim abandoned, but allowed Lin and his counsel to proceed. Thus, the belated fingerprinting did not prejudice Lin.

Second, Lin argues that counsel could not produce any explanation for the "gross . . . discrepancies" in his

testimony, presumably a reference to counsel's failure to raise the alleged brain injury claim. But Lin wholly fails to substantiate his claim that the alleged exposure to mercury could have caused the gross discrepancies in his testimony. He does not, for example, offer any expert evidence that exposure to mercury such as Lin had—whatever that may have been; we don't know because he has offered no evidence of it—could cause someone to forget simple details. So even now Lin has not substantiated his claim that his work at the thermal bottling plant and claimed exposure to mercury "explains" the substantial inconsistencies in his testimony. Thus, it is far from clear that counsel's failure to produce evidence of this alleged explanation for the gross testimonial discrepancies would amount to ineffective assistance.

Another area of ineffectiveness, Lin alleges, was counsel's waiver of closing argument. But Lin has not shown any prejudice resulted from the lack of argument. In addition, Lin argues that the timing of events leading to the disciplinary action against Chiang substantiates his claim of ineffective assistance. According to Lin, "[t]he ARDC [the Illinois Attorney Registration and Disciplinary Commission] found him incompetent in handling cases before April of 2008," which was when the IJ held the hearing in this case. Yet Lin has offered no evidence to substantiate this claim. We do know that on July 28, 2009, the Board suspended Chiang from practicing before the Board, the immigration courts, and DHS pursuant to 8 C.F.R. § 1003.103(a). But representation by counsel whose license has been suspended does not automatically render that assistance per se

ineffective. *See United States v. Williams*, 934 F.2d 847, 851-52 (7th Cir. 1991). The fact that Chiang may have been ineffective in other matters does not direct the conclusion that he was ineffective here. Instead, Lin would have to show that an error or omission by Chiang prejudiced his case. He has not done so. Moreover, the IJ cited a host of reasons for finding Lin not credible. The record shows that Lin had a full and fair opportunity to present his claim.

Finally, Lin argues that the IJ should have determined whether he was competent to testify. He asserts that his very limited education and alleged brain injuries affected his cognitive abilities and competence to testify, not his credibility. The failure to exhaust aside, Lin could not prevail on this argument. When an alien raises the issue of his competency with the IJ, the IJ generally is not expected to *sua sponte* initiate a competency evaluation. *See, e.g.*, *Munoz-Monsalve v. Mukasey*, 551 F.3d 1, 6 (1st Cir. 2008). Lin was represented by counsel at the hearing before the IJ; counsel could have raised the issue of Lin's competency, but did not. Furthermore, although Lin gave inconsistent answers and was unable to recall details of key events, there is nothing to suggest that this was due to a lack of competency rather than, as the IJ found, a lack of credibility.

### III. CONCLUSION

For the foregoing reasons, the petition for review is DENIED.