NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 20, 2013
Decided November 26, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-1745

| | |
|---|---|
| QUAN JIANG,<br>    *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals. |
| v. | A089 697 319 |
| ERIC H. HOLDER, JR.,<br>Attorney General of the United States,<br>    *Respondent*. | |

**O R D E R**

Quan Jiang, a 37 year-old native of China living in the United States without authorization, seeks relief from removal. He told an immigration judge that he left his home country after police discovered him at a house church, detained and beat him,

and ordered him to perform manual labor. He fears persecution by the Chinese government based on his religion (Christianity). The IJ denied Jiang relief from removal after concluding that Jiang's testimony was inconsistent, he failed to provide corroborating evidence of his religious activities, and he was therefore not credible. The Board of Immigration Appeals dismissed his appeal. Substantial evidence supports the agency's decision, so we deny the petition.

Born in Liaoning province, Jiang attended college, got a job, and married there. He suffered a workplace injury in February 2005, which caused him to lose his job and become depressed as he could no longer support his family. He soon began studying the Bible to relieve his depression and attended weekly services at a church that was not approved by the Chinese government.

Jiang offered varying testimony about a Bible-study session that the police disrupted when they responded to a report of an "illegal gathering." The police, Jiang said, searched the home where he and four others were meeting, confiscated two Bibles, "tore one Bible into pieces," arrested them, and questioned them at the local station. Jiang testified that he organized this gathering after he finished work one day. When the IJ reminded him that he had testified that he was studying the Bible because he was not working, Jiang replied that "simply because I didn't work doesn't mean that my friends didn't work. They can call." Jiang also gave different accounts of the timing of this arrest. At first, Jiang dated the arrest to July 2006, but then stated that it occurred in February 2007. Jiang's parents wrote that the arrest occurred in July 2006, but that is when Jiang says he was baptized. Finally, in describing that baptism, Jiang's testimony also alternated: he first stated that his pastor was present, then he reversed himself and said that the pastor was unavailable that day, and finally he maintained that the pastor came and then left.

Jiang asserted that police detained him for a week after his arrest and repeatedly interrogated him. During the first interrogation, police showed him the damaged Bible and accused him of involvement with anti-government influences. Dissatisfied with Jiang's response that the Bible just "spread[s] gospels," the interrogator, Jiang testified, threw him against a wall, handcuffed him to a radiator, electrocuted him with an electric baton, slapped his face, and knocked out one of his teeth. During further questioning, police shone a desk lamp in his eyes. Later, Jiang said, he was forced to hold a book to his chest, which the interrogator repeatedly hit with a hammer until Jiang became faint.

Jiang also described the events after his release, again offering varying evidence. A police captain ordered him to report back to the station to clean it. According to Jiang's written statement, the police ordered him to report monthly. He later testified, however, that the police initially required him to report weekly, and then permitted him to report every other week. Jiang explained that his improved memory and a desire to give a simple written statement explain the inconsistency in these statements; the IJ accepted his explanation. Jiang also testified that to secure his release, his parents informed him that they had paid 10,000 yuan for his bail. Finally, Jiang recalled that before he left the station, police told him to promise to refrain from church activities, but he refused.

After five months Jiang got fed up with reporting to the police and decided to flee, leaving behind his family in China. Jiang came to the United States on a six-months' visitor's visa in September 2007 and, fearing religious persecution, timely applied for asylum, withholding of removal, and relief under the Convention Against Torture. He says that he continues to practice Christianity, attending Sunday services at a church in Chicago. He testified that he joined this church in 2003. This is four years before he arrived in the United States.

Before Jiang's final hearing in January 2011, the IJ discussed with him the need for corroborating evidence. The IJ ordered him to submit documents showing his ongoing religious practice in the United States, such as an affidavit from his pastor or a fellow parishioner, and a list of witnesses he planned to present. Jiang submitted documents from his parents, but did not produce evidence of his current religious activities or a witness list. He explained at his January 2011 hearing that he planned to bring a witness from his Chicago church, but asserted that the witness was ill and could not attend the hearing.

The IJ rejected Jiang's application for relief. Identifying several inconsistencies, some of which the IJ deemed "minor," the IJ concluded that Jiang was not credible and that he failed to provide corroboration of past persecution or of his ongoing religious practice and consequent fear of future persecution. Accordingly, the IJ denied all relief. The Board of Immigration Appeals upheld the adverse-credibility finding, pointing to inconsistencies regarding the date of Jiang's arrest, his pastor's presence at his baptism, and his employment status when arrested. The Board also upheld the IJ's ruling that Jiang failed to corroborate his testimony, noting that Jiang's only corroborating evidence, a letter from his parents, contradicted his testimony regarding the date of his arrest.

Jiang argues on appeal that the discrepancies in his statements and the record are "minor," so it was error for the agency to rely on them in finding him incredible. He also asserts that the agency improperly discounted the probative value of his corroborating evidence and erred by requiring further corroboration. He does not contend that additional corroboration was unavailable to him.

Since the Board adopted and supplemented the IJ's decision, we review both opinions. *See Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011); *Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010). We uphold the agency's factual findings when they are supported by substantial evidence and overturn them only if the evidence compels a different result. *See Abraham*, 647 F.3d at 632; *Krishnapillai v. Holder*, 563 F.3d 606, 615 (7th Cir. 2009). Because Jiang filed his application after May 11, 2005, the REAL ID Act applies: a credibility determination may be based on any non-trivial inconsistencies, even those that do not go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Hassan v. Holder*, 571 F.3d 631, 637 (7th Cir. 2009); *Mitondo v. Mukasey*, 523 F.3d 784, 787–88 (7th Cir. 2008).

Substantial evidence supports the adverse-credibility determination. The IJ and Board discredited Jiang's testimony because of a litany of discrepancies in his pre-hearing statements and the record. Two of these discrepancies go to the heart of his claim. First, he testified inconsistently about the timing of his religious activities. He professed in his application and at the hearing that he discovered Christianity only after he lost his job. But he testified that he was arrested at a Bible-study session that he organized when he returned home from work one day. When confronted with this discrepancy, Jiang simply changed his testimony to say that the meeting occurred after his friends, not he, finished work. Second, the month when police allegedly arrested and beat Jiang fluctuated: Jiang presented a letter from his parents stating that he was arrested in July 2006, and at first he agreed with that. But he soon changed his testimony, maintaining that the arrest occurred in February 2007. The record also discloses discrepancies about Jiang's religious practices. Jiang's story about his pastor's participation at his baptism flip-flopped. At first the pastor was present, then he was not, then he was present for a while. Jiang also testified that he joined his Chicago church in 2003. But this was four years before he came to Chicago.

Jiang replies that the IJ deemed these many inconsistencies "minor." But the only discrepancy that the IJ thought Jiang adequately explained was the variation in how often he said he had to report to the police. The other inconsistencies all relate to the timing of his alleged past persecution and his religious practices. Even if they are minor

in isolation, they are not trivial when combined, so the agency did not err in concluding that, based on these inconsistencies, Jiang lacked credibility. *See, e.g., Abraham*, 647 F.3d at 633 (finding adverse-credibility ruling properly supported by petitioner's inconsistent testimony regarding time line of events); *Lin v. Holder*, 630 F.3d 536, 544 (7th Cir. 2010) (upholding adverse-credibility determination where petitioner gave inconsistent dates for wife's abortion and contradicted forced-sterilization allegation by testifying that wife was capable of having children); *Krishnapillai*, 563 F.3d at 618 (ruling that IJ did not err by discrediting petitioner's explanation that inconsistency in application and testimony regarding timing of departure from native country was mistake).

Jiang next contends that the agency improperly required corroboration. The IJ may require corroborating evidence that is reasonably available to the petitioner, even when the IJ finds a petitioner otherwise credible. 8 U.S.C. § 1252(b)(4); *Abraham*, 647 F.3d at 633; *Krishnapillai*, 563 F.3d at 618. Jiang's only "corroborating" evidence of his past persecution actually contradicted him. The letter from his parents states that he was arrested in July 2006, yet Jiang maintained that he was arrested six months later. Because of the contradiction, the agency permissibly discounted this evidence and required additional corroboration of his alleged past persecution and religious activity. *See Abraham*, 647 F.3d at 633–34; *Lin*, 630 F.3d at 543. In particular, the agency reasonably expected Jiang to provide the evidence it requested—an affidavit from his current pastor or a fellow parishioner to confirm his continued religious practice. *See Abraham*, 647 F.3d at 633; *Krishnapillai*, 563 F.3d at 618–19. Jiang has never contended that this evidence was unavailable to him; rather, he asserts that the one parishioner he intended to call as a witness was ill the day of the hearing. But that assertion does not explain why he could not produce written statements, as requested.

Thus, we DENY the petition for review.